## Chicago and E. I. R. R. Co. v. Milan O. Taylor.

1. RAILROADS—*Negligence in Running Trains Through Stations.*— It is negligence for a railroad company to run a train through a station, upon a track lying parallel to one on which another of its trains is stopping for the purpose of receiving and discharging passengers at such station, between such train and the station building, without the exercise of the greatest care and caution.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed June 23, 1902.

**Statement.**—At 5:30 P. M. of January 13, 1899, appellee was injured by a train operated by appellant at its Seventy-sixth street station in the city of Chicago, Illinois. Seventy-sixth street runs east and west. The tracks of appellant run north and south. The station building is upon the east

side of the right of way. The first track west of the sta-
tion is a siding that passes into the premises of the Staver
carriage factory. The next track to the west is the north-
bound passenger track. The third track to the west is the
south-bound passenger track. There are freight tracks fur-
ther west. The tracks and station platform are on the same
level. Appellee, for more than a year prior to his injury had
worked at the Staver carriage factory, and had lived at Chi-
cago Heights, a suburb south of Seventy-sixth street on the
line of appellant's road. He came from and returned to
his home upon the train of appellant. He usually went to
his home on a train which passed through the Seventy-sixth
street station at 5:31 P. M.

On the evening in question he came to the station about
5:30 P. M. The night was dark and foggy. When he saw,
or thought he saw his train approaching, he left the station
building and crossed the switch-track and walked two or
three steps further west, when he was struck by appellant's
north-bound train, and thus received the injuries of which
he complains.

W. H. LYFORD and KENESAW M. LANDIS, attorneys for
appellant; ALBERT M. CROSS, of counsel.

BULKLEY, GRAY & MORE, attorneys for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

The uncontroverted facts of this case show that appellee
at the time he was injured was in law a passenger. He
was a regular patron of the road and had a ticket entitling
him to ride between Seventy-sixth street and Washington
Heights. He came to the station for the purpose of taking
the south-bound train, then about due. In order to reach
that train he had to cross the track upon which appellant
ran its north-bound passenger trains. Under these circum-
stances appellant owed him the duty of affording him a
reasonable opportunity of reaching his train in safety. (C.
& E. Ill. R. R. Co. v. Jennings, 190 Ill. 478.) If his train
had arrived, it was negligence in appellant to run another

train, if it did, through that station, upon a track lying between the station building and that south-bound train, without the exercise of the greatest care and caution.

Which of these two trains, the north-bound or the south-bound, first reached this station, is sharply contested. Appellee and four other witnesses swear that the south-bound train had come in and had stopped, or was stopping, before the north-bound train arrived. On the other hand, appellant produced six witnesses who swear that the north-bound train first drew into the station. The evidence is not only contradictory, but it is repugnant. We can not see that in finding this fact in favor of the appellee the jury were moved by passion or by prejudice, nor can we say such finding is manifestly against the evidence. Hence, in this regard, we ought not to disturb the verdict of the jury. It is their peculiar province to determine which is the better evidence and the more worthy of belief. Elgin, Joliet and Eastern Ry. Co. v. Reese, 70 Ill. App. 463.

At what rate of speed was the north bound train run into this station? Here again there is a conflict in the evidence. Roy Davis swears that the north-bound train pulled in between the south-bound train and the station "at about twenty miles an hour, I should say." Burt Davis says: "It was a passenger train going swift." Henry Roth testifies: "I saw it go by swift." Opposed to this, the engineer of the north-bound train, Hemphill, swears that he was running but eight or ten miles an hour when his engine struck appellee. The conductor of the same train testifies: "From Seventy-eighth to Seventy-sixth street my train was running at about ten miles an hour." When appellee was struck the engineer put the emergency brakes on every car, and yet the train ran half its length before it stopped. The rules and regulations of the operating department of appellant, then in force, forbade the passing of opposing trains while passengers were being discharged at a station. In speaking of this regulation the engineer, Hemphill, said :

"I never before met any train right at the station. It

was one of the strictest rules of the company that we should not, and I knew it at the time."

Whether or not this north-bound train, at the time of the injury, was run into this station in a negligent manner, under all the evidence, was a question of fact for the jury. They found that fact against the appellant, and we can not say, from an examination of the record, that such finding is wrong.

Was appellee in the exercise of reasonable care for his own safety at the time he was injured?

All the witnesses agree that the night was dark. Engineer Hemphill says:

"It was a pretty bad evening, foggy and damp, but not raining. There was quite a fog; that is the reason I was leaning out of the window."

Appellee says: "That night it was very dark and foggy and quite cold."

There is evidence in the record tending to show that cars were standing on the side track next to the station, which would prevent one passing from the station to the south-bound train from seeing the coming of a north-bound train until he was within a very few feet of the north-bound track. These trains had never before met at this station. Engineer Hemphill testifies:

"I generally met that train (the south-bound train) a little south of Englewood. * * * I was late that night and could not tell just where I was going to meet this No. 11 train."

Appellee was very familiar with this station. For over a year, except a little while during the summer, he had come to his work and had gone home through this station. As a rule he took this 5:31 p. m. train in going home. We must presume from these facts that he knew that no train, going north, was due at the time he attempted to board his train. Appellee swears:

"As I walked out from the station I came out there to the tracks; I glanced, I think, up and down the track and I saw nothing. * * * I did not see the train that struck me, nor hear any bell ringing or whistle sounding."

There were two, if not three, live engines then at this station. There must have been smoke, steam and conflicting sounds in the air of that dark and foggy night. As is usual in railway injury cases, there is a conflict in the evidence as to whether or not a bell was rung upon, or a whistle sounded from the north-bound train. Under all these circumstances it was for the jury to say whether or not appellee was in the exercise of ordinary care for his own safety at the time he was injured. C. & E. I. R. R. Co. v. Jennings, 190 Ill. 478.

The evidence shows that appellee at the time of his injury was fifty years of age, a skilled mechanic with steady employment, earning $2.50 per day; that since he was hurt he has not been able to work at his trade, and is now laboring for $1.25 per day; and it seems that his disability is not only permanent, but that it may progress to a condition of total disability. We do not think the damages recovered by him are excessive.

We have carefully examined the instructions given for appellee, to which appellant objects, and do not find reversible error in any of them. Instruction No. 1 is approved in North Chicago St. Ry. Co. v. Kaspers, 186 Ill. 246–250. The objections to instructions Nos. 3 and 4 are fully met by the court in Springfield Ry. Co. v. Hoeffner, 175 Ill. 634–641.

In the opinion of a majority of the court no damages should be allowed upon the affirmance of this case.

The judgment of the Superior Court will be affirmed.